## SASSER vs. McWILLIAMS.

1. A deed from a husband to his wife contained the following words of conveyance: "Unto the said (grantee) during her natural life, not subject to be disposed of by her will nor in any other manner whatever, neither subject to the control and liabilities of any future husband or husbands." The *habendum* and *tenendum* clause was as follows: "To have and to hold . . . unto the said (grantee) only during her natural life, together with all and singular," etc. Then came the following restrictive words: "Subject, however, to the maintenance, use and benefit and control of the said (grantor) during his natural life; also subject to the distribution of the legal heirs of the said (grantor) at the death of the said (grantee) :"

*Held*, that such a deed conveyed to the wife a use for life, in connection with her husband, while he lived, and then the mere use, at his death, as long as she lived, and with power in the grantor to part with the property by will or deed, or distribute it in any other way he chose consistent with the mere usufruct in her during her life.

(*a*.) This construction of the words "distribution of the legal heirs," is confirmed by the course pursued by the grantor afterwards in dividing his estate by will, and in the use there made of the word "distribution."

(*b*.) A construction of the marriage contract between the grantor and grantee gives the same result.

(*c*.) There are words in the marriage settlement which, literally construed, would deprive the husband of any right at all to dispose of his own property, outside of his own heirs, except to his wife; but construing the entire scheme of the settlement on the eve of marriage together, such a restriction is not made.

(*d*.) Words "or otherwise" construed.

October 2, 1884.

Deeds. Title. Husband and Wife. Marriage Contracts. Construction. Words and Phrases. Wills. Before Judge CLARKE. Randolph Superior Court. May Term, 1884.

Jared B. McWilliams brought complaint against J. G. Sasser on two promissory notes. Defendant pleaded that they were given for the purchase of land, and that plaintiff did not have and could not make a good title thereto; and offered to rescind the trade. It was agreed that Thomas N. McWilliams was a widower, with several children, and that Margaret Buchanan was a widow, also with several children; that they were married in 1849, and plaintiff was their child. The case turned upon the construction of a marriage contract between the parties, a deed and the will of Thomas N. McWilliams.

The marriage contract, dated October 3, 1849, after mentioning certain property, continued as follows :

" All other property which is now in her, the said Margaret Buchanan's possession, and all other property which may be given said Margaret Buchanan by her father or other person, by will or otherwise, or be inherited by her from her father or other person, shall form and remain to be her separate property and estate, and shall not, in law or equity, be subject to the payment of the debts of the said Thomas N. McWilliams, but the right and title of said property shall be vested in Edmond W. Hodges, as trustee, of the third part, for the use and benefit of said Margaret Buchanan; and the said Thomas N. McWilliams further covenants and agrees that said Margaret Buchanan may dispose of said property by will to any person she may appoint, subject, however, to be used by said Thomas N. McWilliams, with the approbation and consent of said Edmond W. Hodges, during the continuance of the coverture, for the mutual benefit and advantage of said Thomas N. McWilliams and Margaret Buchanan. We, the said Thomas N. McWilliams and Margaret Buchanan, as aforesaid, do further covenant and agree that all the lands and negroes, horses and stock of all kinds, and property of every description whatsoever that is now in the possession of said Thomas N. McWilliams, or may hereafter be in his possession, by will or otherwise, is and shall not be liable to the debts or liabilities of the said Margaret Buchanan, nor subject to division by the heirs of the said Margaret Buchanan, nor subject to be disposed of in any way, by will or otherwise; but that the said property shall be sepa-

rate and distinct estate, exclusively for the benefit and use of the heirs at law of the said Thomas N. McWilliams at the death of the said Thomas N. McWilliams, except so much thereof as may be disposed of by the will of the said Thomas N. McWilliams to the said Margaret Buchanan or otherwise," etc.

The deed from Thomas N. McWilliams to his wife, dated November 20, 1849, contained the following clauses :

" For and in consideration of the natural love and affection which he (McWilliams) has and bears to his said wife, Margaret McWilliams, hath given, granted and conveyed, and does, by these presents, give, grant and convey unto the said Margaret McWilliams, during her natural life, not subject to be disposed of by her will, nor in no other manner whatever, neither subject to the control or liabilities of any future husband or husbands, all that tract or parcel of land (describing it).

" To have and to hold said tracts or parcels of land unto her, the said Margaret McWilliams, only during her natural life, together with all and singular the rights, members and appurtenances to the same in any manner, belonging, to her own proper use subject, however, to the maintenance, use and benefit and control of the said Thomas N. McWilliams during his natural life; also subject to the distribution of the legal heirs of the said Thomas N. McWilliams."

The will of McWilliams contained the following items material to the present case :

. . . . " I therefore deem it right and proper, both as it respects my family and myself, that I should make a distribution of the property with which a kind Providence has blessed me, do, therefore, make this my last will and testament, hereby revoking all others heretofore made by me," etc.

"3d Item. I give, bequeath and devise that my wife, Margaret McWilliams, shall have the sum of five ($5.00) dollars, to be paid to her by my executors out of my estate, as she, the said Margaret, has left my residence and is attending to her own individual interests. Said five dollars is given in addition to some land and negro property deeded by myself to said Margaret, for and during her natural life only, and then to descend to my first children; said property deeded in the year 1849, since our intermarriage together. The bequests here made to my wife, Margaret McWilliams, are in lieu of her whole dower, etc., out of my estate.

"4th Item. I give, bequeath and devise to my youngest son, Jared B. McWilliams, and son of Margaret McWilliams, at the death of said Margaret, two negroes, to-wit: William, a man about thirty-five years of age, of dark complexion; also Rebecca, a girl about ten

years of age, of dark complexion; which negroes were deeded to Margaret McWilliams during her natural life only. I further devise and decree that said negroes are not to be subject to the ownership, debts, liabilities nor control of no wife nor wives of the said Jared B. McWilliams; neither shall he, the said Jared, have the right of selling or deeding them, or any increase of them, to any person whatever previous to his having a child or children of his own.

"5th Item. I devise and direct that, provided said Jared B. McWilliams should die, having no child or children, that the said negroes, with all their interest and future increase, go to my first children, and representatives of children, by Rebecca L. Irwin, and be equally divided amongst them.

"6th Item. I devise and direct and also bequeath that, after the death of my wife, Margaret McWilliams, that my son, Jared B. McWilliams, shall have all those tracts of land lying and being in the county of originally Lee, but now Randolph county, known and distinguished by number (24) twenty-four, and east half of number (23) twenty-three, in the fourth district, containing three hundred acres, be the same more or less; also which lands I have deeded to Margaret McWilliams during her natural life only—said lands, nor no part thereof, is to be subject to the debts, liabilities or control of any wife or wives of the said Jared B.; neither shall the said Jared B. have the right of disposing of said lands by will, or deed, or otherwise, previous to his having a child or children of his own.

"7th Item. I devise and direct that, provided my son, Jared B. McWilliams, shall or should die, leaving no child or children, that the said lands go to the first or eldest stock of my children, and representatives of these children, by Rebecca McWilliams, formerly Rebecca L. Irwin, and be equally divided amongst them.

"8th Item. I give, bequeath and devise to my youngest son, Jared B. McWilliams, and son of my present wife, Margaret, the sum of fifty dollars at the end of every year be paid to the mother, guardian or care-taker of the said Jared B., for the term of fourteen years, provided said Jared should be spared to live that long, for paying or remunerating the mother, guardian or care-taker, or other person whose lot it may be to raise and educate said child, till he is fourteen years of age, should he live that long. It is further devised and decreed by me that the said Jared B. McWilliams shall not be entitled to no other portion or dividend out of my estate, only what is heretofore pointed out. It is also directed and decreed that, on the death of either of my children by Rebecca McWilliams, that the Jared B. will not be entitled to any portion nor dividend out of either of their estates."

McWilliams died, and Mrs. McWilliams made a conveyance of the land to the plaintiff.

The court held that the plaintiff's title was good, and a

verdict and judgment were entered for him.    Defendant moved for a new trial, which was refused, and he excepted.

C. B. WOOTEN, for plaintiff in error.

W. D. KIDDOO, for defendant.

JACKSON, Chief Justice.

A suit was brought by McWilliams against Sasser on two promissory notes. The defence is an equitable plea, to the effect that the consideration of the notes is the balance due for land, and that the plaintiff cannot make good title to the land, and defendant offers to rescind and deliver up the land, on payment back to him of what he had already paid. The jury found for the plaintiff; whereupon the defendant made a motion for a new trial, on various grounds, all of which mean but one thing, that the court erred in construing the papers in evidence, so that plaintiff had, and could make, good title. If the construction of the papers was right, the new trial was properly refused; if wrong, the motion should have been granted.

1. The point turns on the construction of a deed from the father of the plaintiff to his mother. If that deed passed the title, the fee, out of the father to the mother for life, with remainder over to his heirs at law, then the plaintiff's title, derived from his father's will, is not good; but if it only passed a life estate into the mother, leaving the fee subject to distribution by the father as he chose after the wife's or mother's life estate was exhausted, then the plaintiff's title is good, and the construction and verdict are right.

The deed contains no words of conveyance whatever, except the life estate to the mother. All the other words in it are words of restriction or limitation on her right, not of conveyance to others after her death. The grantor was very particular in using plain and homely, not artificial or technical, words to convey his meaning; and he

has succeeded in so conveying that meaning as to render it quite clear from the deed itself. The words of conveyance are:

"Unto the said Margaret McWilliams, during her natural life, not subject to be disposed of by her will, nor in any other manner whatever; neither subject to the control and liabilities of any future husband or husbands."

And the *habendum* and *tenendum* are as follows:

"To have and to hold . . . unto the said Margaret McWilliams only during her natural life, together with all and singular," etc.

Then follow restrictive words, and not words of conveyance at all—words which narrow the grant before given. Those words are:

"Subject, however, to the maintenance, use and benefit and control of the said Thomas N. McWilliams during his natural life; also subject to the distribution of the legal heirs of the said Thomas N. McWilliams at the death of the said Margaret McWilliams."

It will be observed that these words are all restrictive upon the life interest of Mrs. McWilliams. Her husband is to control it, and to have the use, benefit and maintenance out of it jointly with his wife. She could not sell the life estate. All that she got is a life use of it, in connection with her husband while he lived, and then the mere use of it at his death as long as she lived. And this control of it by him, and this restriction on her use, are provided thus particularly, so that it may also be "subject to the distribution of the legal heirs" of the grantor at her death; that is, we think, to such distribution as he may think fit to make of it, keeping the control in himself at her death. He kept that control so that he might part with it by will or deed, or distribute it in any other way he chose, consistent with the mere usufruct in her during her life.

This construction, if doubtful, of the words "distribution of the legal heirs," is confirmed by the course pursued by the grantor afterwards. He did distribute the entire estate, this land included, among his legal heirs by his will,

to take effect, as to this particular tract, at the death of his wife. And this he left to his son by her, this son being the only fruit of his marriage with her, he having had nine other legal heirs by a former wife, to each of whom he distributed by will other property. In that will he says, in the very beginning, after stating his age and probability of soon dying :

"I therefore deem it right and proper, both as it respects my family and myself, that I should make a distribution of the property with which," etc.

Thus he uses the word "distribution" in the sense he had before used it in the deed for the use of his wife's life, now for construction; not in the sense of distribution by the statute of distributions, but in the sense of division by himself among his heirs as he saw fit.

For these reasons, we think that the donor meant to give his wife the mere usufruct of this property for her life, with the reservation of absolute control of its disposition in himself, to take effect at her death, subject only to her usufruct during life, and even that curtailed by his joint usufruct during his own life.

If we look at the marriage contract between the father and mother of the plaintiff, this construction, or that which results in the same decision of the case at bar, will as clearly appear.

She was a widow with children; he, a widower with children. Her property was to be hers, and not to go to his children in any event. His was to go to his own heirs and not to her or hers, unless he saw fit to give her by will (as it would seem the contract meant) a part of it. He did give her this life interest by this deed. He did not interfere, or try to interfere, with hers. By his will he did distribute his own among his own heirs, including his son by her, and giving that son what he had given her a life use in, to-wit, some negroes and this land, besides interest on a certain fund. So that this construction of the deed harmonizes the marriage contract, the will and the deed

under consideration. And we think it just. Otherwise the fruit of the marriage would get nothing by his father's will. .

It is true that there are some words in the marriage settlement which, if literally construed, would deprive the father of the plaintiff of any right at all to dispose of his own property outside of his own heirs, except to his wife; for it provides that his property

"Shall not be liable to the debts or liabilities of the said Margaret Buchanan, nor subject to division by the heirs of the said Margaret, nor subject to be disposed of in any way by will or otherwise. But that the said property shall be separate and distinct estate exclusively for the benefit and use of the heirs at law of the said Thomas N. McWilliams at the death of the said Thomas N. McWilliams, except so much thereof as may be disposed of by the will of the said Thomas N. McWilliams to the said Margaret Buchanan or otherwise."

The words "or otherwise" would qualify grammatically the words "Margaret Buchanan," perhaps, and mean, 'or any other person to whom he wished to give his property,' and would thus prevent him from giving it to her except by will, but confer the power to give it by will to whomsoever he pleased, herself included; and thus would exclude him from giving it to her by deed and annul the deed to her, and thus undoubtedly leave the title in him. But when the entire scheme of the settlement on the eve of marriage is considered, we think the meaning is that her children by her former marriage are not to take his property by heirship through her, and his are not to take hers through him; but as she is empowered to dispose of hers by will as she pleases, so he may of his; neither's to go by inheritance or otherwise to the children of the other by the first marriage, but only by will, if either chose so to will it.

It is not reasonable that he meant to tie up his own hands so as to bind himself not to dispose of his own by will, while the same instrument allowed her to do so with her own. Yet the words, "but that the said property shall

be separate and distinct estate. exclusively for the benefit and use of the heirs at law of the said Thomas N. McWilliams, at the death of the said Thomas N. McWilliams," would so mean, if literally construed in connection with the exception which follows in favor of his wife, to-wit: " except so much thereof as may be disposed of by the will of the said Thomas N. McWilliams to the said Margaret Buchanan or otherwise." Those words, " or otherwise," mean the reservation of his right to dispose of any of his own by will to anybody, just as his wife had the right to dispose of hers to anybody by will.

But be all this reasoning sound or not, the entire scheme of the settlement, the deed to the wife, the will afterwards disposing of the whole of his property to his legal heirs, the restrictions put on the wife's use of what he gave her for life, the reservation of control in himself, subject only to this life usufruct in her, the negation of her right to sell her life interest, all tend to confirm the correctness of the construction put on the deed by the learned judge who tried the case, and to lead us with confidence to affirm his judgment.

Judgment affirmed.